

**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

**ENTERED**
**TAWANA C. MARSHALL, CLERK**
**THE DATE OF ENTRY IS**
**ON THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed September 23, 2009**                                    **United States Bankruptcy Judge**

---

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 07-43858-DML-11 |
| SPIRIT OF PRAYER MINISTRIES, INC., | § | |
| | § | |
| DEBTOR. | § | |
| | § | |

### MEMORNDUM OPINION AND ORDER

Before the court is the *Second Amended Objection to Claim Number 4 of Estate of Hazel Hodges* (the "Claim Objection") filed by Spirit of Prayer Ministries, Inc. ("Debtor"). On July 13, 2009, the court held a hearing (the "Hearing") on the Claim Objection and heard argument from Debtor and the Estate of Hazel Hodges (the "Estate"). Debtor and the Estate (together, the "Parties") then submitted briefs and entered into a stipulation of facts regarding the Claim Objection.

This matter is subject to the court's core jurisdiction. 28 U.S.C. §§ 1334 and 157(b)(2)(B) and (O). This memorandum opinion embodies the court's findings of fact and conclusions of law. FED. R. BANKR. P. 7052 and 9014.

**I.     Facts**

On March 1, 2007, County Court at Law No. 1 in Tarrant County, Texas (the "State Court"), entered a judgment (the "Judgment") in favor of Ernest and Hazel Hodges (the "Hodges") against Debtor in the amount of $290,728.49.[1] On or about July 9, 2007, the Hodges filed an abstract of judgment against Debtor's property in Tarrant County. Both Ernest and Hazel Hodges passed away before otherwise enforcing the Judgment. Hazel Hodges died on June 28, 2007, and Ernest Hodges died on September 3, 2007.

The same day that Ernest Hodges died, September 3, 2007, Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code (the "Code").[2] On October 9, 2007, Scott Moseley ("Moseley"), as attorney for the Estate, timely filed a proof of claim on behalf of the Estate, and on June 23, 2008, Moseley filed an amended proof of claim (together with the October 9 claim, the "Hazel Hodges Claim"). The Hazel Hodges Claim seeks to recover from Debtor on the Judgment. Because the Judgment had been

---

[1] The Judgment awards damages as follows: (1) for breach of contract in the amount of $10,849.53 for damage to property and $27,000.00 for loss of marketability, for total economic damages of $37,849.53, plus exemplary damages of three times economic damages, for a total of $151,398.12; (2) for deceptive trade practices, violation of fair debt collection practices, and mental anguish in the amount of three times economic damages for a total of $113,548.59; (3) for attorneys' fees and costs on immediate appeal in the amount of $15,000.00; (4) for attorneys' fees and costs on appeal to the Texas Supreme Court in the amount of $15,000.00; and (5) for other costs and fees in the amount of $790.78. The Judgment also awarded interest at a rate of 6 percent per annum from the date of the Judgment until it is paid. Thus, the total amount of the Judgment before interest was $290,728.49. The Judgment, however, expressly conditions the two awards of $15,000.00—for intermediate appeal and for appeal to the Texas Supreme Court—on pursuit by Debtor of ultimately unsuccessful appeals. Debtor never pursued appeals in the state-court system, so the amount claimable by the Estate must be reduced by $30,000.00 to $260,728.49 plus interest at 6 percent per annum up to the date the petition was filed.

[2] 11 U.S.C. §§ 101 *et seq.*

2

abstracted against Debtor's property, the Hazel Hodges Claim was filed as secured. The Hazel Hodges Claim included a claim for post-judgment interest and attorneys' fees.

On October 1, 2008, in disposition of an adversary proceeding filed by Debtor,[3] the court set aside the abstract of judgment as a preferential transfer under Code §§ 547 and 550. As a result, the Hazel Hodges Claim is unsecured. The Hazel Hodges Claim also asserted classification as an administrative priority claim under Code § 507(a)(6) [sic]. The Parties, however, have stipulated that there is no basis on which the Hazel Hodges Claim is entitled to priority treatment. The Hazel Hodges Claim is, therefore, a general unsecured claim.

On August 11, 2009, some seventeen months after the bar date for filing proofs of claim in this case, the estate of Ernest Hodges filed a motion to allow a late-filed proof of claim.[4] The court denied that motion in a *Memorandum Order* issued on September 10, 2009.

## II. **The Claim Objection**

Debtor objects to the Hazel Hodges Claim on six grounds. First, Debtor alleges that the Estate owns, at most, an undivided one-half interest in the Judgment and is entitled to collect only that portion which it owns. Thus, the court must determine whether the Estate may make a claim for the entire Judgment. Second, Debtor objects to the Hazel Hodges Claim being classified as secured. As discussed above, the court has already resolved this objection, and the Hazel Hodges Claim is now classified as a general unsecured claim. Third, Debtor objects to the Hazel Hodges Claim including

---

[3] Adversary Proceeding No. 07-04199.

[4] The bar date for filing claims pursuant to FED. R. BANKR. P. 3003(c) was January 8, 2008.

interest and fees accrued after Debtor filed its petition. The Parties have stipulated that the holder of the Hazel Hodges Claim is not entitled to any post-petition interest or fees, and the court accepts that stipulation. Fourth, Debtor objects to the Hazel Hodges Claim on the grounds that the Judgment is not supported by adequate consideration in that it rests on an inadequate legal basis. Thus, Debtor argues that the court should look behind the Judgment. Fifth, Debtor objects to the Hazel Hodges Claim to the extent that the Judgment contains exemplary or punitive damages that are not factually justified. This, too, is an argument that the court should look behind the Judgment. Sixth, Debtor objects to the Hazel Hodges Claim being classified as an administrative priority claim under Code section 507(a)(6) [sic]. As discussed above, however, the Parties have stipulated that there is no basis for such a classification.

Thus, there are two questions before the court: (1) is the Estate entitled to make a claim for the entire Judgment; and (2) should the court review the merits of the Judgment?

The court will address the second question first.

### III. <u>Should the court look behind the Judgment?</u>

Debtor objects to the merits of the Hazel Hodges Claim on two related grounds: (1) the Judgment was not supported by "adequate or sufficient" legal bases; and (2) the Hazel Hodges Claim should be disallowed to the extent that the Judgment provides for exemplary or punitive damages that were not factually justified. These arguments constitute a collateral attack on the Judgment that is impermissible under the *Rooker-Feldman* Doctrine. *See Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280

(2005); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

The State Court entered the Judgment on March 1, 2007, on cross motions for summary judgment.[5] To be final and ripe for appeal in Texas state courts "a summary judgment must dispose of all parties and issues before the court." *Lockheed Martin Corp. v. Gordon*, 16 S.W.3d 127, 132 (Tex. App.—Houston [1] 2000) (citing *Mafrige v. Ross*, 866 S.W.2d 590, 591 (Tex. 1993)). In Texas, a "writ of error may be taken at any time within six months after the date the final judgment is rendered." Tex. Civ. Prac. & Rem. Code § 51.013. More than six months have passed since the State Court entered the Judgment. The Judgment disposed of all the parties and issues before the State Court. Thus, the Judgment is final and no longer subject to appeal in the state-court system.

Under the *Rooker-Feldman* Doctrine, "lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463 (2006). That is because 28 U.S.C. § 1257 vests any appellate jurisdiction that federal courts have as to decisions of state courts exclusively in the United States Supreme Court. *Id*. A party that has lost in state court may not bring a case in federal district court inviting the district court to review and reject the state court's judgment.[6] *Exxon Mobil*, 544 U.S. at 459.

---

[5] Debtor was the plaintiff in the state court suit that led to the Judgment, and Ernest and Hazel Hodges were the defendants. Debtor and the Hodges filed cross motions for summary judgment. The State Court found that there were no genuine issues of material fact and that the Hodges had proven all elements of their counterclaims and affirmative defenses and disproven at least one element of each of Debtor's affirmative defenses. The State Court further found that Debtor had not proven its case.

[6] A bankruptcy court is a unit of the district court and so the *Rooker-Fedlman* Doctrine prohibits a bankruptcy court from engaging in the same appellate-style review.

Debtor's collateral attack on the Judgment represents, in effect, an appeal to this court to reconsider the determinations of the State Court. Debtor contends that there was not an adequate legal basis for the Judgment and that any punitive or exemplary damages were not factually justified. In rendering the Judgment the State Court necessarily found that there was an adequate legal basis and that facts existed that warranted punitive and exemplary damages. Under the *Rooker-Feldman* Doctrine, this court has no authority to review and undo the State Court's findings of fact and conclusions of law. The court, therefore, must accept as valid the Judgment, and Debtor's objections that question the Judgment's merits must be overruled.

### IV. Is the Estate entitled to make a claim for the entire Judgment?

Debtor argues that the Estate owns, at most, half of the Judgment, and therefore the Hazel Hodges Claim should be reduced in amount by one half. Debtor's argument is based on Texas marital property law, *i.e.*, the characterization of the Judgment as separate or community property determining which spouse is entitled to ownership of it. Debtor is mischaracterizing the issue, however, because the court is not concerned with which spouse owns the proceeds of the Judgment. The issue before the court is whether the Estate is entitled to make a claim for the Judgment.

The State Court entered the Judgment in the names of both Ernest and Hazel Hodges, a fact which Debtor acknowledges.[7] Furthermore, the Judgment specifically states, "IT IS FURTHER ORDERED that Defendants, Ernest and Hazel Hodges, are entitled to enforce this judgment through abstract, execution, and any other process ...."[8]

---

[7] *See Brief in Support of Objection to Claim of Estate of Hazel Hodges*, p. 5 [dkt. no. 125].

[8] *See Order Granting Defendant's Motion for Final Summary Judgment*, attached as Exhibit "A" to *Brief in Support of Objection to Claim of Estate of Hazel Hodges* [dkt. no. 125].

6

(emphasis in original). The Judgment does not divide entitlement to the damages between Ernest and Hazel Hodges. As discussed above, under the *Rooker-Fedman* Doctrine the court is bound by the Judgment, and the Judgment gives both Ernest and Hazel Hodges the right to enforce it.[9] Thus, the Estate is entitled to enforce the Judgment in its entirety. Any dispute as to ownership between the two estates based on marital property law is a matter best left to the Texas probate courts.

Debtor argues that, if it is required to pay the Hazel Hodges Claim in full, and so pay the entire Judgment to the Estate, Ernest Hodges' estate may subsequently appear in an attempt to collect its alleged one-half interest. Debtor asserts that, if that happens, the Estate may not be able to restore the funds paid to it, and Debtor would therefore be liable for double payment. But Debtor's expressions of concern are disingenuous. The court has already denied Ernest Hodges's estate's motion to allow a late-filed proof of claim, and the Judgment will be discharged as a result of confirmation of Debtor's chapter 11 plan. *See* Code § 1142(d). In other words, though Debtor was fully aware of the Judgment, and though the Judgment represents a fully liquidated liability of Debtor, Debtor now seeks the benefit of its discharge in bankruptcy to bar later pursuit of the Judgment while arguing the Estate's rights should be limited to protect Debtor from that very discharged liability.

Allowing the Estate to enforce the entire Judgment causes Debtor no unfair surprise. The Estate filed a copy of the Judgment with its proof of claim. Debtor, therefore, cannot claim that it, as a debtor in possession, was not on notice of the amount

---

[9] It would require a very strained reading of the Judgment to conclude that Ernest and Hazel Hodges are each only entitled to enforce half of the Judgment and that both Ernest and Hazel Hodges must come together to enforce it in its entirety.

of the Judgment. Indeed, the court would be well-warranted to find in the copy of the Judgment filed by the Estate the basis for an amendable informal proof of claim by the estate of Ernest Hodges.[10] *See* 9 COLLIER ON BANKRUPTCY ¶ 3001.05 (15th ed. rev. 2009).

Furthermore, Debtor acted in bad faith by listing the Judgment as a "disputed" debt on Debtor's schedule D. *See* 9 COLLIER ON BANKRUPTCY ¶ 3003.02[1] (15th ed. rev. 2009) (citing *In re American Skate Corp.*, 10 C.B.C.2d 1278 (Bankr. D.N.H. 1984)). When Debtor filed its chapter 11 case, the Judgment was a final judgment. There was nothing "disputed" about it. Debtor had its chance to dispute liability in the State Court, and Debtor lost. Debtor then failed to appeal, thus allowing the Judgment to become permanently fixed and liquidated. If the Judgment had been properly characterized as undisputed on schedule D, the estate of Ernest Hodges would not have needed to file a proof of claim. FED. R. BANKR. P. 3003(b)(1) & (c)(2). If that were the case, both estates would have valid claims in Debtor's chapter 11 case by virtue of being listed on Debtor's schedule D. *Id.*

Debtor cites *Whittlesey v. Miller*, 572 S.W.2d 665, 669 (Tex. 1978), for the proposition that the Estate has no right to make a claim on behalf of the estate of Ernest Hodges. In *Whittlesey* the Texas Supreme Court said that, "[i]n the absence of evidence showing authority, the mere relationship of husband and wife does not give the husband

---

[10] Notably, the same counsel, Moseley, serves both estates. In the court's *Memorandum Order* of September 10, 2009, the court held that notice to Moseley in his capacity as counsel to the Estate was notice to him in his role as counsel for the estate of Ernest Hodges. Thus, the filing by him of a proof of claim in his capacity as counsel to the Estate should be regarded as an act taken as well, to the extent necessary to preserve the Judgment, on behalf of the estate of Ernest Hodges.

8

authority to contract with regard to the wife's separate property." *Whittlesey*, 572 S.W.2d at 669.[11]

Debtor's reliance on *Whittlesey* is misplaced. One spouse's authority to collect a judgment entered in both spouses' names, where the judgment specifically orders that both spouses are entitled to enforce it, is not at all analogous to a situation in which a husband purportedly attempted to contract away his wife's separate property rights. Furthermore, collecting a judgment for breach of contract and deceptive trade practices from a judgment debtor that is in bankruptcy is in no way analogous to a husband unilaterally contracting away his wife's right to pursue an action for loss of consortium by signing a settlement agreement. Here, the Estate is simply trying to enforce a Judgment entered on its decedent's behalf, where the Judgment specifically granted the decedent the right to enforce it.

Next, Debtor cites *Greenwall v. Ligon*, 14 S.W.2d 829 (Comm. App. Tex. 1929), for the proposition that an executor or administrator who collects money, when he is not the proper person to collect it, will be liable to the person who is actually entitled to it. Debtor's reliance on *Greenwall* is misplaced for two reasons. First, the Judgment specifically states that both spouses are entitled to enforce it, and it is silent as to who owns what portion of it. Thus, the Estate is a proper entity to collect the Judgment even

---

[11] *Whittlesey* addressed the question of "whether one spouse has an independent cause of action for loss of consortium as a result of physical injuries caused to the other spouse by the negligence of a third party." *Whittlesey*, 572 S.W.2d at 665. In concluding that each spouse does have such a cause of action, the Court noted that a recovery by either spouse would be characterized as the recovering spouse's separate property. Mr. Whittlesey had negligently injured Mr. Miller in an automobile accident, and the two men entered into a settlement agreement with respect to Mr. Miller's personal injury claims. When Mrs. Miller later sued Mr. Whittlesey for loss of consortium, Mr. Whittlesey argued that the settlement agreement between him and Mr. Miller as to Mr. Miller's personal injuries precluded Mrs. Miller's independent cause of action for loss of consortium. The Texas Supreme Court concluded that "[i]n the absence of evidence showing authority, the mere relationship of husband and wife does not give the husband authority to contract with regard to the wife's separate property." *Whittlesey*, 572 S.W.2d at 669.

if it will not ultimately be entitled to keep the entire amount. Second, *Greenwall* actually supports the Estate's argument that division of the Judgment proceeds should be left to the probate court. If the Estate collects the Judgment, then, under *Greenwall*, Ernest Hodges' estate will have a right to recover its share. The issue of who is entitled to keep a given portion of the Judgment after enforcement is not before this court.

The thrust of these cases—indeed the gravamen of Debtor's argument—requires an antagonism between the Estate and Ernest Hodges's estate. In other words, in order for Debtor's argument to gain traction, the court would be required to conclude that allowing the Hazel Hodges Claim in full would benefit only the Estate to the exclusion of the estate of Ernest Hodges. The record before the court suggests the contrary. Common representation by Moseley of both estates virtually ensures that each will receive its due either by agreement or through action of the probate court.

Debtor's suggested alternative—that the estate of Ernest Hodges receive no benefit at all and that Debtor be relieved of one-half the burden of the Judgment—does nothing to solve the principal flaws Debtor finds in allowing the Hazel Hodges Claim in full. Rather, Debtor's proposed result turns equity on its head. Arriving at such a result would make a mockery of this court's claim that its role is one of equitable distribution of estate proceeds among entitled creditors. [12]

In any event, the court will not entertain Debtor's attempt to avoid payment of a valid judgment against it on the grounds that only one of two estates equally entitled to

---

[12] The claims objection process involves the exercise of the court's equitable jurisdiction. *See S.G. Phillips Constructors, Inc. v. City of Burlington (In re S.G. Phillips Constructors, Inc.)*, 45 F.3d 702, 705 (2d Cir. 1995) ("[T]he allowance or disallowance of claims" is within the bankruptcy court's core jurisdiction.) (internal quotations omitted); *Adeleke v. United States*, 355 F.3d 144, 150 (2d Cir. 2004) (referring to the bankruptcy court's "equitable *in rem* jurisdiction"); 1 COLLIER ON BANKRUPTCY ¶ 2.09 (14th ed. 1988). Claim objections are adjudicated by the court by virtue of its *in rem* jurisdiction. *See Tenn Student Assistance Corp. v. Hood* 541 U.S. 440 (2004).

10

enforce it has filed a proof of claim. This is especially true when, but for Debtor's bad faith,[13] it would not have been necessary for either estate to file a proof of claim to begin with. After all, "the purpose of the bankruptcy code is to afford the honest but unfortunate debtor a fresh start, not to shield those who abuse the bankruptcy process in order to avoid paying their debts." *Molitor v. Eidson (In re Molitor)*, 76 F.3d 218, 220 (8th Cir. 1996). Debtor's objection to the Hazel Hodges Claim on the basis of divided ownership of the Judgment must be overruled.

## V. Conclusion

Debtor objects to the Hazel Hodges Claim on the grounds that the Estate is not entitled to enforce the entire Judgment, that the Judgment is not supported by an adequate or sufficient legal basis, and that any punitive or exemplary damages are not factually justified. For the reasons stated above, the Claim Objection is hereby OVERRULED.

It is so ORDERED.

### END OF MEMORANDUM OPINON AND ORDER ###

---

[13] Indeed, though invoking the court's equitable jurisdiction, Debtor lacks the clean hands necessary to obtain relief. *See Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 814 (1945) ("[H]e who comes into equity must come with clean hands.") (internal quotations omitted).